| Frank Ricci | |
| vs. | Law No. 63069. |
| Thomas F. McGovern | |

May 13, 1929.

HAHN, J. This is an action of assumpsit brought to recover the difference between various sums of money paid by the defendant to plaintiff for stones supplied by plaintiff to the defendant for use as rip-rap on the fill of the Ashland causeway, constituting a part of the Scituate Reservoir system for the Providence water supply, and the price claimed by plaintiff to have been agreed upon.

The plaintiff's contention is that he was to be paid $1.00 per cubic yard for stones which he supplied to defendant from walls and $1.25 for stones which came from quarries, which amount has been paid, but plaintiff further insists that under the terms of a contract which he made with one Holmes, as agent of the defendant, he was entitled to have a final settlement based upon the amount of stones in the rip-rap in the section or sections where stone supplied by him was placed. This final measurement of the stone, plaintiff claims, would show accurately the amount which he furnished, and that the amount of $1.00 and $1.25 per cubic yard as delivered by the plaintiff upon the trucks of defendant was necessarily exceedingly inaccurate.

The case was heard before the Court, jury trial having been waived. The defendant claimed that the payments made every two weeks for the different loads of stone supplied by the plaintiff constituted payment in full and that there was no contract as to a final settlement based upon the amount of stone in the rip-rap, or that Holmes was in any manner authorized to make such contract, or in fact did make such contract, the defendant claiming certain entries on his payroll, one of which reads as follows:

"Frank Ricci; quarry 2 weeks, 102 loads, 3 yards to the load, 306 yards, at $1.25 a yard, $382.50. Stonewall, 2 weeks, 376 loads, 3 yards to the load, 1,128 yards at $1."

This entry, the defendant claims, is a fair statement of the contract and the method of determining the payments thereunder. The balance due as now claimed by the plaintiff for the difference between the stone delivered at the rip-rap and the payment made at the time of delivery of stone to defendant from the wall and quarries is the sum of $2,591.00.

The agent Holmes did not testify and could not be found in order to take his deposition, so the principal evidence in the case is that of the plaintiff and defendant. As their testimony as to the method in which the cubic yards were to be ascertained is wholly contradictory, it is necessary to consider the probability that the parties entered into the contract as stated by the plaintiff, as well as the authority of Holmes to enter into the contract as testified to by plaintiff.

In view of the stipulation as to the different rate of payment, $1.00 for wall stone and $1.25 for quarry stone, it would seem more natural that the amount should be determined at the source rather than after the stone had been dumped and mixed. If the amount was only to be definitely determined upon measurement of the stone after dumping and placing on the rip-rap, a single or uniform rate

per cubic yard would have been more in keeping with the contract.

Again, since plaintiff was only to supply the stone at its source and defendant was to do all the carrying and dumping, one would have expected plaintiff to be paid for the amount of stone turned over to the defendant. After it left plaintiff's hands some of it might have been lost en route or part of it dumped elsewhere than plaintiff expected. The only point where plaintiff could properly keep a tally of the stone was at the source. If we imagine dishonesty on the part of the defendant, a part of each load could undoubtedly have been dumped elsewhere than at the particular spot or section afterwards measured. Plaintiff could thereby have been called upon to rebate no small part of the sums paid every two weeks, if settlement was to be made according to the final measurement on the rip-rap. Is it probable that plaintiff would have wished to enter into such a contract? Why should he have made himself liable to any possible losses arising through the negligence or fraud of defendant or defendant's servants?

In addition to this, there was the difficulty of ascertaining the amount of quarry stone, and the amount of stone from walls, in the rip-rap. After it was dumped, placed and blasted, what kind of measurement would show just how much was stone from quarry and how much from walls? Yet this difference was important in view of the difference in the amount paid for the two kinds of stone.

The question also arises why was plaintiff paid in advance or in part rather than after the amount actually due was ascertained, if plaintiff's claim as to the method of final settlement is correct? No great period of time elapsed between the supplying of the stone by plaintiff and its placement and measurement on the rip-rap to warrant advancing plaintiff any

sums, and no other consideration appears for such payment.

On the whole the probabilities greatly favor defendant's contention and his contention is strengthened by the fact that another contractor, who supplied him with stone, was paid per load without regard to the amount found at the rip-rap. If the estimate of three cubic yards per load was too low, plaintiff would hardly have accepted it as a basis of any sort. If defendant was cheating him to begin with, how much more likely that he would be cheating him still more in the end, when the stone had passed entirely out of plaintiff's hands.

If the stone when measured on the causeway showed an apparent increase over the amount of three cubic yards per load, the small increase (not over 15 or 20%) might well have been due to the effects of blasting, for which plaintiff could hardly claim recompense, but if it was due to plaintiff having loaded more than three cubic yards to the truck, it was a chance plaintiff took. Another contractor took a like chance in supplying stone.

But assuming that the contract was as plaintiff claims, what right did the agent of the defendant have to make it? Whether he was superintendent, foreman, or held some other like position, all the testimony shows that the agent in contracting with the plaintiff in no case acted by himself but frankly stated that he would have to take the matter up with the defendant and let the plaintiff know (Transcript, p. 8, 37). The prices, and undoubtedly the other terms of the agreement were referred to the defendant for his consideration; the agent did not presume to act in the matter on his own authority. If he made a contract different from that defendant claims, and most unusual in view of all the circumstances, he obviously had no right to make it; and how can it be said plaintiff was led to believe the agent had

any such right and was not put upon inquiry to learn whether so unusual a contract was in fact accepted by the defendant and approved by him?

No case exactly in point is cited by the parties, but the general rule in similar cases is pretty well discussed and set out in the case of

Stephens vs. John L. Roper Lumber Co., 41 L. N. S. 1141.

In that case it was held that a superintendent of a lumber camp has no implied authority to contract with an employee who is being laid off, to pay him a monthly salary in consideration of his refraining from taking other employment, and holding himself in readiness to resume work upon notice to that effect.

Similarly, in the case of Prior vs. Flagler, 10 N. Y. Misc. 496, the Court held that a steward had no authority to contract with a cook that because of a severe injury which the cook had suffered he should be paid his full salary if he would resign his position.

In other words, an agent has no implied power to do acts that are unusual, and is limited by the usual course of dealing in the business in which he is employed.

In the present case, therefore, although the agent undoubtedly had authority to hire help and do the things customary and usual connected with such hiring, it does not seem reasonable to hold that he could provide for a method of payment wholly out of the ordinary. The entry on the pay-rolls would certainly lead the defendant to suppose the plaintiff was being paid the proper and full sums due him. If anyone was put upon inquiry, it was the plaintiff. He should have seen to it that defendant understood the unusual terms upon which such payments were being made, if they were in fact part or advance payments subject to final revision.

The burden is upon the plaintiff to prove to the Court by a fair preponderance of the evidence that the contract was as stated by him, and that the agent of the defendant was authorized to make such contract. In the absence of Mr. Holmes, the alleged agent of the defendant, who, it is claimed, had authority to make the contract in question, the Court, by giving ample time to the plaintiff, endeavored to have Mr. Holmes present or his testimony in the form of a deposition before the Court, in order that the various matters in relation to the contract could be taken up and explained. In the absence of the witness Holmes or his deposition, it cannot be said that the plaintiff has proven by the preponderance required either the authority of Mr. Holmes to make the contract in regard to re-measuring the amount of stone delivered or that such contract was in fact entered into.

For the above reasons decision must be for the defendant.

For plaintiff: Mendell W Crane and William A. Gunning.

For defendant: Greenough, Easton & Cross, Harvey S. Reynolds.

